UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LYDIA CONLAY, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-08-1038 |
| | § | |
| BAYLOR COLLEGE OF MEDICINE | § | |
| Defendant. | § | |

## ORDER DENYING PRELIMINARY INJUNCTION

Plaintiff Lydia Conlay brings this motion for a preliminary injunction (Dkt.195), seeking to prevent defendant Baylor College of Medicine from cutting her annual salary to $11,000 pending trial on the merits of her breach of contract and Title VII retaliation claims. On February 11-12, 2010, the court held a hearing at which both sides presented witnesses and documentary evidence. To streamline the presentation, the record underlying this court's recent summary judgment ruling (Dkt. 213) was incorporated by reference into this proceeding.[1] Jury trial on the merits is currently set for March 22, 2010.

Upon careful consideration of the parties' briefs, evidence, and the law, the court makes the following findings of fact and conclusions of law, and holds that Conlay has failed to establish her claim for preliminary injunctive relief. Accordingly, Conlay's motion is denied.

---

[1]     Tr. vol. 1, 21 (February 11, 2010).

### Findings of Fact[2]

1.      Dr. Lydia Conlay  was hired as Chair of Baylor's Anesthesiology Department

(as well as Chief of Anesthesiology Service at Methodist Hospital)  pursuant to an

offer letter dated October 16, 2002. D.Ex.19.  She assumed both positions in February

2003.

2.      The five-page offer letter, signed by then-Baylor President/CEO Ralph Feigin

and Methodist President/CEO Ronald Girotto, began with a rambling discussion of

understandings regarding the scope, plans, and goals for the position, and concluded

with a  summary of her salary ($500,000 per year) and other benefits. D.Ex. 19.

3.      Among those benefits was a salary guarantee which forms the crux of  Conlay's

breach of contract claim, one of two causes of action still before the court.[3] The

disputed term is set out in the following paragraph:

> We understand and acknowledge your concerns about the risk to your
> career concerning the acceptance of this position. Although Baylor
> College of Medicine provides an annual reappointment and salary letter
> to all faculty, we understand the unique nature of the circumstances
> surrounding this position and in addition to the usual benefits of

---

[2]      To the extent any Findings of Fact are more properly designated Conclusions of
Law, they are so deemed, and vice versa.   Of course, findings of fact and
conclusions of law on preliminary injunction are not binding at a trial on the
merits.  *University of Texas v. Camenisch*, 451 U.S. 390, 305 (1981).

[3]      The other live claim is for retaliation under Title VII. The court disposed of
Conlay's defamation and gender discrimination claims by summary judgment.
(Dkt. 213.)

> tenure, are willing to commit to guarantee your salary on a rolling basis
> (subject to the following understanding) for three years beyond any
> current date of employment.  If you do not continue to serve as
> Chair/Chief of Service, you would remain at Baylor as Professor with
> tenure, with all of the obligations and benefits which that entails and
> (as with all of our faculty on guarantee salary), all fees would be
> retained by the School to be applied against the salary obligation.  You
> would, of course, be free to pursue other opportunities if you deemed
> them desirable and if you were to accept another position, our
> obligations under this agreement would cease.

D.Ex. 19 at p. 4.

4.     The salary guarantee was  the product of negotiation, having been first
proposed by Conlay in response to an earlier  draft of the letter.[4] Tr. vol. 1, 149.

5.     In February 2005, Methodist removed Conlay from her position as Chief of
Anesthesia Service at The Methodist Hospital. Conlay continued to work as Chair of
Baylor's Anesthesiology Department. Tr. vol. 1, 160; D.Ex. 110.

6.     In March 2006, an external review of the Anesthesiology Department was
conducted. The review reflected negatively on Conlay's leadership. D.Ex. 205.

7.     On April 4, 2006, less than two weeks after the review but before she learned
of its content,  Conlay sent an email to Dr. Peter Traber, then Baylor's CEO,
complaining about rumors of her impending removal. Conlay wrote:

> As I think about things that have happened, reluctantly, I just cannot
> seem to escape the conclusion that my being a woman has somehow
> played into the consideration of my possible replacement. Please

---

[4]        D.Ex. 13, 14.

understand that my goal here is not to trigger an inquiry or anything like that, but rather to bring to your attention just how important, and in some cases, novel, such role models are for the approximately half of our graduating class who are women. . .

D.Ex. 43, Dkt. 132-2.

8.     Conlay was advised in a December 14, 2006 meeting with Dr. Traber and Dr. Jay Stein that she would be removed as Chair of the Anesthesiology Department. Tr. vol. 1, 47; D.Ex. 110.

9.     The next day Conlay filed the first of three charges of discrimination with the EEOC. Tr. vol. 1, 47.

10.     By letter dated January 11, 2007, Conlay was notified of her removal as Chair of the Anesthesiology Department effective that day. Dr. Maya Suresh was appointed to act as Interim Chair, pending a search for Conlay's replacement.  The letter further advised that Conlay would remain a professor in good standing at the school, and concluded with the following paragraph regarding salary:

In accordance with your October 16, 2002 offer letter, you will continue to receive an annual salary of $520,150 through October 31, 2009, subject to the terms and conditions contained in your annual appointment letter. Thereafter, this obligation will cease and you will then negotiate your salary with the Department Chair.

 D.Ex. 34.

11.     Conlay wrote a letter to Traber in early January 2007 reflecting upon her role in the Anesthesiology Department going forward.  In that letter she stated that she

would need to "refresh my clinical skills for the more complicated cases" typically seen at Ben Taub Hospital, where she was then credentialed.  D.Ex. 33.

12.    In February 2007, Conlay was sent to work at the VA hospital, even though she did not yet have doctor's credentials or privileges there. Tr. vol. 1, 49.

13.    By letter dated March 30, 2007, Suresh confirmed Conlay's assignment to the VA hospital, with 60% of her time devoted to clinical duties in the operating room, and the remaining 40% of her time to academic/non-clinical activities. D.Ex. 51. Suresh  testified that Conlay's preferences were taken into account in making this assignment, particularly her admission that she needed to refresh her clinical skills. Tr. vol. 2, 83 (Feb. 12, 2010).

14.    On September 26, 2007,  Conlay filed a second charge of discrimination and retaliation with the EEOC. In particular, Conlay claimed that since April 2007 she had been moved from "position to position", unlike other former male chairs of departments at Baylor. She did not complain that the initial assignment to the VA, as opposed to some other hospital within Baylor's system such as Ben Taub, was itself retaliatory or discriminatory. P.Ex. 34; D.Ex.55. *See also* D.Ex. 60, p.1 (Conlay "has not complained about being assigned to work at the VA hospital").

15.    Conlay worked at the VA hospital continuously from February 2007 through the date of the injunction hearing on February 12, 2010.  Unlike other hospitals staffed with Baylor physicians (such as Ben Taub Hospital), the VA does not

5

reimburse Baylor for Conlay's salary, nor does her position at the VA generate any revenue for Baylor.   Tr. vol. 1, 245.

16.     By letter dated November 16, 2009, Baylor advised Conlay that her salary guarantee would continue until January 11, 2010, "which is three years from the day you no longer served as Chair of Anesthesiology." D.Ex. 71.

17.     Conlay responded by letter dated December 15, 2009,  expressing her disagreement with Baylor's interpretation of the 3 year salary guarantee. Conlay interpreted the 3 year guarantee as a severance payment, which would not be triggered until her last day of employment with Baylor. D.Ex. 72.

18.     By letter emailed January 11, 2010, Baylor told Conlay, "[N]ow that the guaranteed period has ended Baylor will reduce your annual salary to $11,000, which is the current minimum amount at 100% FTE that will enable you to continue receiving benefits." D.Ex. 73.

19.     At Baylor, tenure by itself does not guarantee any particular salary level. Baylor witnesses testified without contradiction that  several of its tenured professors are paid a salary of $11,000 or less. Tr. vol. 1, 251.

20.     Conlay filed this motion for preliminary injunction on January 14, 2010. (Dkt. 195). She argues that this dramatic reduction in salary is tantamount to taking away her tenure, and that she will suffer irreparable injury in the form of professional stigma and loss of reputation unless her salary is restored to its pre-January 11, 2010

level. Tr. vol. 1, 7.

21.     This case is currently set for jury trial on March 22, 2010.

**Conclusions of Law**

1.     To obtain a preliminary injunction, Conlay must show: (1) that she has a substantial likelihood of prevailing on the merits of her claims; (2) irreparable injury will be suffered unless the injunction issues; (3) the harm she is likely to suffer outweighs any harm to Baylor if the injunction is granted and (4) the injunction would not be adverse to the public interest. *See Paulsson Geophysical Services, Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008).

2.     A preliminary injunction will be denied based on a failure to prove separately any of the four elements of the four-prong test for obtaining the injunction. *Apple Barrel Productions Inc. v. Beard*, 730 F.2d 384, 389 (5th Cir. 1984); *Southern Monorail Co. v. Robbins & Myers, Inc.*, 666 F.2d 185, 186 (5th Cir. 1982).

**Likelihood of success on merits**

3.     Conlay's has two remaining claims: Title VII retaliation and breach of contract.

4.     A claim of retaliation under Title VII has three elements: (1) protected activity by the plaintiff, (2) adverse action by the employer, and (3) a "but for" causal nexus between the two. *Pierce v. Texas Dep't of Criminal Justice,* 37 F.3d 1146, 1151 (5th Cir. 1994).

5.     There are two types of protected activity under section 704(a) of Title VII: (a)

participation in any manner in a Title VII investigation, proceeding, or hearing (such as filing an EEOC charge); and (b) opposition to a practice that the employee reasonably believes is in violation of Title VII. *De Anda v. St. Joseph's Hosp.*, 671 F.2d 850, 853 n.2 (5th Cir. 1982). Conlay's retaliation claims assert both types of protected activity: her removal as Chair  due to her opposition activity, and her assignment to the VA (and recent salary reduction) due to  her EEOC charges.

6.     Based on the summary judgment record and the evidence presented at the hearing, Conlay is  unlikely to  establish that her April 2006  email to Traber[5] constituted protected opposition activity under Title VII. In order to be protected, Conlay must show a reasonable belief that the conduct complained of (i.e. her rumored removal as Chair) was unlawful gender discrimination under Title VII. *Byers v. Dallas Morning News, Inc.,* 209 F.3d 418, 428 (5th Cir. 2000). As already explained in detail in the court's  summary judgment opinion (Dkt. 213), Conlay's evidence of gender discrimination is insufficient for a reasonable person to conclude that Baylor's decision to remove her from the Chair position was based on her sex. For that reason the April 2006 email is unlikely to be found protected activity, and hence Conlay is unlikely to succeed on her claim that Baylor's demotion decision was unlawful retaliation.

---

[5]        Finding of fact no. 7, supra.

7.      Filing an EEOC charge is protected activity under Title VII's participation clause, whether or not the charging party's belief is reasonable. *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995).  While the decision to demote Conlay pre-dated her EEOC charge,  the  decision to assign her to the VA hospital was made afterwards, and, Conlay contends, in retaliation for the EEOC charge.  On this record, the only apparent basis to infer retaliatory intent regarding the VA assignment is its  temporal nexus to the EEOC charge.  However, temporal nexus by itself is  insufficient to establish "but for" causation. *Strong v. University Healthcare System, LLC,* 482 F.3d 802, 807-08 (5 th Cir. 2007) ("[W]e affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of causation.").  Moreover, the fact that Conlay's salary and benefits were unchanged for three years after the initial EEOC charge also tends to negate the temporal inference of retaliatory salary reduction.   Thus, it is also unlikely that Conlay will prevail on her claim of retaliatory assignment and salary reduction.

8.      To prevail on her breach of contract claim, Conlay must prove (1) the existence of a valid contract, (2) the performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages to the plaintiff resulting from that breach.  *Lewis v. Bank of Am. NA*, 343 F.3d 540, 544 (5th Cir. 2003).

9.       As a matter of law, the court concludes that the salary guarantee provision in

9

the contract is ambiguous.   Conlay's interpretation of the October 2002 offer letter—that the  salary guarantee continues for three years beyond  her last date of employment with Baylor in any capacity—is a plausible reading of that language.[6] Likewise, Baylor's position that the 3 year salary guarantee was triggered by Conlay's removal from the Chair position is one of several  reasonable interpretations[7] of the "subject to" limitation on the salary commitment.[8]   Reasonable arguments can be made against both interpretations, based on imprecise grammar and undefined phrases.[9] Additional evidence will be necessary for a fact-finder to determine the parties' actual intent regarding this term.

10.    On balance, Conlay has shown a reasonable likelihood (though not a certainty) of success on her breach of contract claim.

---

[6]    D. Ex. 19 at 4. ("[W]e . . . are willing to commit to guarantee your salary on a rolling basis (subject to the following understanding) for three years **beyond any current date of employment**.") (emphasis added).

[7]    Dr. Burruss, who along with Dr. Spann made the decision to reduce Conlay's salary, interpreted the 3 year guarantee even more restrictively than Dr. Spann. According to Burruss, the 3 year guarantee period was triggered when she first started work in 2003. Tr. vol. 2, 41-42.

[8]    D.Ex. 19 at 4. ("If you do not continue to serve as Chair/Chief of Service, you would remain at Baylor as Professor with tenure, with all of the obligations and benefits which that entails and (as with all of our faculty on guaranteed salary), all fees would be retained by the School to be applied against the salary obligation.").

[9]    E.g., what does "rolling basis" mean? What does "any current date of employment" refer to? What are "all of the obligations and benefits" of tenure?

**Irreparable harm**

11.    The "threat of irreparable injury is 'perhaps the single most important prerequisite for the issuance of a preliminary injunction.'" 11A CHARLES ALAN WRIGHT & ARTHUR B. MILLER, Federal Practice and Practice and Procedure Civil 2d § 2948.1 (1995). Indeed, the Supreme Court has stated "that the basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies[.]" *Sampson v. Murray*, 415 U.S. 61, 88 (1974).

12.    Irreparable harm requires a showing that: (a) harm to the plaintiff is imminent; (b) the injury would be irreparable; and (c) the plaintiff has no other adequate legal remedy. *See Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975). Irreparable harm must be proven separately and convincingly, or no injunction may issue. The burden of proof is not reduced by either the existence of an extremely strong likelihood of success on the merits or the egregiousness of the alleged wrong upon which the underlying claim is based. *White*, 862 F.2d at 1212.

13.    Despite earlier case law suggesting otherwise,[10] the Fifth Circuit made clear in *White v. Carlucci* that there is no Fifth Circuit precedent "eliminating generally the irreparable harm requirement for all Title VII plaintiffs." 862 F.2d 1209, 1211 (5th Cir. 1989).  An exception to the irreparable harm requirement for governmental

---

[10]      *Middleton-Keirn v. Stone*, 655 F.2d 609, 611 (5th Cir. 1981); *U.S. Hayes International Corporation*, 415 F.2d 1038, 1039-45 (5th Cir. 1974).

plaintiffs seeking injunctive relief pursuant to statute was recognized in *EEOC v. Cosmair, Inc.,* 821 F.2d 1085, 1090 (5th Cir. 1987).  Because Title VII does not expressly authorize a presumption of irreparable injury for private litigants, Conlay is not excused from the irreparable harm requirement. *See generally Black Fire Fighters Ass'n v. Dallas,* 905 F.2d 63,67 (5th Cir. 1990) (Jones, J., concurring).

14.    If money damages are adequate for the threatened loss, there is no irreparable harm to the plaintiff.  *DFW Metro Line Services v. Southwestern Bell Telephone Co.,* 901 F.2d 1267, 1269 (5th Cir. 1990) (per curiam); *Parks v. Dunlop,* 517 F.2d 785, 787 (5th Cir.1975). Temporary loss of income, ultimately to be recovered, does not normally constitute irreparable harm. *Sampson v. Murray,* 415 U.S. at 90.

15.    Irreparable harm is not established in employment cases by financial distress or inability to find other employment, unless truly extraordinary circumstances exist. *See Sampson v. Murray,*  415 U.S. at 92 n.68;  *Morgan v. Fletcher,* 518 F.2d 236, 239 (5th Cir. 1975). The plaintiff's insufficiency of savings or difficulties in obtaining other income generally will not support a finding of irreparable injury, regardless of how severely they may affect a particular individual. *Id.*

16.    In weighing irreparable harm, a court may appropriately consider the time remaining until full trial on the merits.  *N.W. Controls, Inc. v. Outboard Marine Corp.,* 317 F. Supp. 698, 704 (D. Del. 1970) (short duration of time remaining before trial militates against a finding of irreparable injury to the plaintiff ); *see also* 11A WRIGHT

& MILLER, Federal Practice and Procedure § 2948.1 (1995).

17.    Conlay has not demonstrated that the salary reduction, dramatic as it is, will result in irreparable financial or economic harm. Evidence at the hearing revealed that Conlay still possesses financial resources and assets that are not insignificant, especially in the short term.   Conlay's concerns about damage to her  credit rating and potential eviction from her home also do not pose extraordinary circumstances warranting relief. Even assuming that monetary damages would be  inadequate to remedy such  harm, these things are not only  speculative at this point but also unlikely to come to pass in the few weeks remaining until trial on the merits.

18.    Conlay has also failed to establish that the salary reduction will result in professional stigma and loss of reputation which will irreparably damage her career in the medical community. Such harms necessarily entail much greater publicity than this salary decision has received. Baylor has not publicized the decision to third parties, nor has  Conlay shown that anyone has learned of her new salary apart from those she herself has chosen to inform.   Conlay's assumption that  she would be required to disclose her current salary in order to seek another job is unsupported by the record.

19.    Conlay is under no obligation to relinquish her Baylor tenure before seeking other employment.  Baylor representatives testified that Baylor has no intention of removing Conlay's  tenure and they  have  extended  her  office  space  and  made

13

additional accommodations so that she may continue to function as a Baylor tenured professor in her interactions within the academic anesthesia community. Her claim that she might be forced to resign her tenured status at Baylor in the next few weeks in order to find a new position is entirely speculative. Tr. vol. 1, 259, 268.

20.     There is some authority that witness intimidation caused by defendant's retaliatory conduct against a plaintiff may in some cases satisfy the irreparable harm requirement for injunctive relief. *See Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 512 (2d. Cir. 2005) (Sotomayor, J.); *Holt  v. Continental Group Inc.*, 708 F.2d 87, 91 (2d. Cir. 1983). However, Conlay offered no evidence that any particular witness would be intimidated from testifying on her behalf because of her recent salary reduction. She did testify over objection that four women were "fearful of retaliation" and had hired their own counsel. Tr. vol. 1, 71. But there is no evidence who those women are, when they hired counsel, what caused their fear of retaliation, whether they were aware of the salary reduction, or whether they are even listed as witnesses.

21.     Conlay has failed to show any harm beyond financial loss. Any alleged harm to Conlay's career, reputation, or future employment prospects between now and trial, less than a month away, is speculative at best and unsupported by the record. Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant. *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985); *see Bedrossian v. Northwestern Mem'l. Hosp.*, 409 F.3d 840, 846 (7th

14

Cir. 2005) (lost income, damage to reputation, and inability to find another job do not constitute irreparable harm to physician seeking preliminary injunction against pending termination).

22.     Because the potential for irreparable harm does not exist, and a money judgment would fully redress the salary reduction by Baylor, Conlay has failed to make the necessary showing of an irreparable injury.

**Other factors**

23.     Because preliminary injunctive relief should be granted only if the movant has clearly carried the burden of persuasion on all four factors, *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985), it is unnecessary for the court to consider the remaining factors when the movant fails to carry its burden on any one of the factors. *Medlin v. Palmer*, 874 F.2d 1085, 1091 (5th Cir.1989) ("The failure of a movant to establish one of the above four elements will result in the denial of a motion for a temporary injunction.").

<u>Conclusion</u>

Conlay's motion for preliminary injunction restoring her salary to its pre-January 11, 2010 level is denied.

Signed at Houston, Texas on March 3, 2010.

Stephen Wm Smith
United States Magistrate Judge

15